UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Power Electric Distribution, Inc.,

              Petitioner,              **MEMORANDUM OPINION AND ORDER**

v.                                             Civil No. 13-199 ADM/HB

Hengdian Group Linix Motor Co., Ltd.

              Respondent.

_____

Jeffrey W. Post, Esq., Fredrikson & Byron, PA, Minneapolis, MN, on behalf of Petitioner.

Douglas R. Peterson, Esq., and Elizabeth C. Kramer, Esq., Stinson Leonard Street LLP, Minneapolis, MN, on behalf of Respondent.

_____

## I. INTRODUCTION

On January 12, 2015, the undersigned United States District Judge heard oral argument on Respondent Hengdian Group Linix Motor Co., Ltd. and its successor Zhejian Linix Motor Co., Ltd.'s (together, "Linix") Amended Motion for Post Judgment Relief or an Extension of Time to Appeal [Docket No. 78]. Linix seeks relief from three judgments [Docket Nos. 15, 33, 47] that have been entered against it in this action, arguing that the judgments are void because Petitioner Power Electric Distribution, Inc. ("Power Electric") failed to serve Linix using the approved Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") method for service of process on Chinese companies. The Court also heard oral argument on Power Electric's Amended Motion for Attorneys' Fees and Costs [Docket No. 58]. Power Electric seeks recovery of its fees incurred in obtaining the third judgment. For the reasons set forth below, Linix's Amended Motion is granted in part and denied in part, and Power Electric's Amended Motion is granted in part and denied in part.

## II.  BACKGROUND

### A. Parties

Power Electric is a Minnesota corporation that supplies customized electric and gear motors to U.S. manufacturers.  Petition [Docket No. 1] ¶¶ 1, 7.  Power Electric works with overseas motor manufacturers to design motors that meet its customers' needs.  Power Electric then purchases the custom-made motors from the foreign motor manufacturers and resells them to its customers in the U.S.  Id. ¶ 7.

Linix is a Chinese company that manufactures motors.  Linix has no offices or agents in the United States.  Pro Se Mot. Extend Time Filing Notice Appeal [Docket No. 52] ("Pro Se Mot.") 2.

### B.  Supplier Agreement

In 2005, Power Electric and Linix entered into a Supplier Agreement in which Linix agreed to manufacture motors for use by Power Electric's customers.  Post Decl., Sept. 5, 2014 ("First Post Decl.") [Docket No. 63] Ex. A ("Supplier Agreement").  The Supplier Agreement is governed by Minnesota law.  Id. ¶ 7.

Paragraph 7 of the Supplier Agreement states that disputes arising out of the Supplier Agreement will be settled through "arbitration carried on in the English language, administered by the American Arbitration Association under its Commercial Arbitration Rules using three arbitrators, and shall be held in Minneapolis, Minnesota, U.S.A."  Id.

The Supplier Agreement further provides that "judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof."  Id.  Each party to the Supplier Agreement fully consented to the jurisdiction of the federal and state courts in

Minnesota. Id.

The Supplier Agreement also states that Power Electric "shall be entitled to recover its costs and expenses (including reasonable attorneys' fees) incurred to enforce the terms of th[e] Agreement." Id. ¶ 5.

**C.  Arbitration**

In 2012, Power Electric commenced arbitration against Linix over disputes arising out of the Supplier Agreement. See generally Petition, Ex. A ("Arbitration Award"). Almost every significant filing in the arbitration—including the initial arbitration demand, notices, briefs, exhibits, and final notice of the Arbitration Award—was served by email, which is a permissible form of service under the American Arbitration Association's International Dispute Resolution Procedures.[1] Post Decl., Sept. 15, 2014 [Docket No. 76] ("Second Post Decl.") ¶ 2, Ex. 1 at 28. Linix appeared at the arbitration in Minneapolis, Minnesota and contested liability on all counts of Power Electric's claims.

On December 4, 2012, a panel of three arbitrators issued an Arbitration Award requiring Linix to: (1) pay $1,544,835.55 in money damages; (2) return Power Electric's tooling; (3) provide quarterly accountings of all gear motors sold by Linix to Power Electric customer FBD, and (4) pay a royalty of $18.43 for each of the first 50,000 gear motors that Linix sells to FBD. Arbitration Award at 2-4.

The arbitrators further determined that the provision in the Supplier Agreement entitling Power Electric to recover attorneys' fees was applicable to fees incurred by Power Electric to

---

[1] Article 18 of the International Arbitration Rules provides that "all notices, statements and written communications may be served on a party by air mail, air courier, facsimile transmission, telex, telegram or other written forms of electronic communication addressed to the party or its representative at its last known address or by personal service." See Second Post Decl. Ex. 1.

enforce Linix's royalty obligations.  Id. at 19.  However, attorneys' fees were not awarded at the time of arbitration because the royalties owed by Linix had arisen only recently, and "it was reasonable for Linix to await resolution of all claims [in the arbitration] before paying the roughly $3,000 in royalties owed."  Id.  Nevertheless, the arbitrators explicitly noted that "this ruling does not deny or limit Power Electric's right to recover attorneys' fees, if any, that may hereafter be incurred to enforce its rights to future accountings and/or royalties."  Id. at 19-20.

**D.  Power Electric Files Action to Confirm Arbitration Award**

On January 24, 2013, Power Electric filed a Petition to confirm the Arbitration Award.  See generally Petition.  At the time the Petition was filed, Linix had not complied with any of the requirements under the Arbitration Award.

The record establishes that as early as February 2013, Linix was aware of the District Court proceeding even though Power Electric had not yet served Linix with the Summons and Petition.  On February 1, 2013, Linix manager Songwei Wang sent Power Electric's president Dick Pula an email identifying "U S Court Arbitration" as the subject.  Second Post Decl. Ex. 4 at 3.  Wang's email stated that Linix's "Head office law dept" would be in charge of the matter and requested that Power Electric "pls kindly contact me in future."  Id.  The email was sent from Linix email address 007@linix.com.cn.  See id.  Also on February 1, 2013, Linix's arbitration counsel sent an email to Power Electric's counsel stating:  "I understand PE is going to US District court to confirm the Arbitration Award.  PE has every right to do so. . . .  [I]t is perfectly fine to forward all the future correspondence to Mr. Wang."  Id. at 1.

On February 7, 2013, Power Electric sent a copy of the Petition to Linix's counsel via email and requested that Linix consent to entry of a judgment confirming the Arbitration Award.  Second Post Decl. Ex. 6.  Power Electric explained that consenting to entry of the judgment

4

would minimize Linix's liability for service costs and fees.  Id.  Linix's arbitration counsel responded that he was not authorized by Linix to accept service, and that Linix may hire another law firm to represent it in the U.S. District Court proceedings.  Id.

By April 2013, Linix had satisfied the requirements of the Arbitration Award that it pay approximately $1.5 million in money damages and return Power Electric's tooling.  However, the parties disputed whether Linix had fully accounted for all motor sales to FBD, and whether Linix had fully complied with its obligation to pay pre-arbitration royalties.  See, e.g., Second Post Decl. Exs. 3-5.

On June 4, 2013, Power Electric served the Summons and Petition on Linix by personal service.  See Summons and Compl. Return of Service [Docket No. 6].  On June 19, 2013, Wang sent Pula an email from email the 007@linix.com.cn address.  The email stated in part:  "We have received notice from your attorney Shanghai office this month. [P]ls kindly refer attachment.  Could you pls explain it?"  Second Post Decl. Ex. 8.  On June 24, 2013, Linix sent the Summons and Petition to Power Electric's counsel in Shanghai with a letter stating:  "Please proceed according to the Hague Convention."  Kramer Aff., Sept. 5, 2014 [Docket No. 68] ("First Kramer Aff.") ¶ 6; Kramer Aff., Sept. 15, 2014 [Docket No. 73] ("Supplemental Kramer Aff.") Ex. 6.

**E.  Judgment Confirming Arbitration Award**

On August 7, 2013, Power Electric filed a motion to confirm the Arbitration Award.  See Mot. Confirm Arbitration Award [Docket No. 7].  Power Electric sent a copy of the motion by email to Wang at 007@linix.com.cn, as well as an additional Linix email address of 051@linix.com.cn.  Aff. Service [Docket No. 10]; Second Post Decl. Ex. 9.  The motion was also emailed to Linix's arbitration counsel.  Id.  A hearing was scheduled for September 5, 2013.

On August 14, 2013, Power Electric sent a Notice of Hearing to Linix by first-class mail and by email to Wang's email address of 007@linix.com.cn, additional Linix email addresses 051@linix.com.cn and 012@linix.com.cn, as well as to Linix's arbitration counsel. Notice Hrg. [Docket 11] Attach. 1. Linix did not file a response and did not appear at the hearing. See Order, Sept. 5, 2013 [Docket No. 14].

Following the September 5, 2013 hearing, the Court granted Power Electric's motion and entered judgment confirming the Arbitration Award. See id.; J. Confirming Arb. Award [Docket No. 15]. Power Electric sent the Order and Judgment Confirming Arbitration Award by first-class mail and email to Linix and Linix's arbitration counsel. Certif. Service [Docket No. 16]; Second Post Decl. Ex. 10. There is no record of Linix taking any action to challenge the Judgment Confirming Arbitration Award.

**F. Judgment for Attorneys' Fees**

On October 25, 2013, Power Electric filed a motion for attorneys' fees incurred in obtaining the Judgment Confirming Arbitration Award. Mot. Attorneys' Fees [Docket No. 17]. The motion and notice of hearing were served on Linix and its arbitration counsel via mail and email. Certif. Service [Docket No. 21]; Certif. Service [Docket No. 22], Attach. 1; First Post Decl. Ex. C at 1-2. A hearing was held December 12, 2013. Linix did not respond to the motion or appear at the hearing. See Order, Dec. 17, 2013 [Docket No. 32]. The Court granted the motion for attorneys' fees and entered judgment for Power Electric for $52,627. Id.; J. Attorneys' Fees [Docket No. 33]. Power Electric served the Order and Judgment for Attorneys' Fees on Linix and Linix's arbitration counsel by first-class mail and email on December 19, 2013. Certif. Service [Docket No. 34].

After obtaining the Judgment for Attorneys' Fees, Power Electric garnished one of

Linix's customers in Minnesota. See Kramer Aff. Ex. 1. In March 2014, Linix expressed frustration about the Judgment to the customer being garnished. See Second Post Decl. Ex. 11. However, there is no evidence that Linix took any action to challenge the Judgment for Attorneys' Fees or to stop the garnishment. The Judgment for Attorneys' Fees was satisfied in full on or before April 3, 2014. See Notice Partial Satisfaction J. [Docket No. 35].

**G. Modified Judgment**

On May 28, 2014, Power Electric filed a motion [Docket No. 37] seeking to modify the Judgment Confirming Arbitration Award by converting the award of future royalties to a current money judgment for $876,255.24. Power Electric argued that modifying the Judgment was necessary because Linix was evading its royalty obligations under the Arbitration Award by failing to fully report sales for which royalties were owed. Power Electric averred that it had subpoenaed documents from customer FBD showing that Linix sold 580 more motors to FBD than had been reported to Power Electric. Kelley Decl., May 28, 2014 [Docket No. 39] ("First Kelley Decl.") ¶¶ 2-4. Linix reported that it had sold 2,073 motors to FBD, and Linix accordingly paid Power Electric $45,245 in royalties on those motors. However documents subpoenaed from FBD showed Linix had actually sold 2,653 motors to FBD, leaving a shortfall of $21,306 in royalty payments. Id. Power Electric argued that unless the Court reduced the award of future royalties to present money damages, it would be forced to repeatedly return to the Court to enforce the Judgment Confirming Arbitration Award.

Power Electric sent a copy of its motion to modify and supporting documents to Linix by U.S. mail and email on May 28, 2014. See Certif. Service, May 28, 2014 [Docket No. 41].

Linix states that it did not receive Power Electric's emails notifying it of the motion,[2] and that the documents sent by U.S. mail did not arrive until June 28, 2014. Id. at 1. Linix further avers that it was "puzzled" to be receiving documents directly from Power Electric, because in China all litigation-related documents are served by the court. Pro Se Mot. 2. The receipt of documents directly from Power Electric caused Linix to doubt whether the documents were legitimate.

Nevertheless, after receiving the documents, Linix met with a law firm in Shaghai on July 4, 2014 to prepare a response, and wired $23,056 to Power Electric on July 8, 2014 for outstanding royalties owed on motors sold prior to 2013. Id.; He Aff. ¶¶ 7-8. This payment accounted for the vast majority of outstanding royalties at issue in the Motion to Amend Judgment. See Mem. Supp. Mot. Modify J. [Docket No. 38] at 4. Because the money was wired directly to Power Electric, personnel at Power Electric did not become aware of Linix's payment until after Linix provided a notice of payment on July 24, 2014. Kelley Decl., Sept. 5, 2014 [Docket No. 62] ("Second Kelley Decl.") ¶ 2, Ex. A.

On July 16, 2014, the Court granted Power Electric's Motion to Modify Judgment. See Order, July 16, 2014 [Docket No. 46]; Modified Judgment [Docket No. 47]. Power Electric sent Linix a copy of the Order and Modified Judgment by U.S. mail. Certif. Service [Docket No. 48].

Linix avers it received the Order granting the Motion for Modified Judgment by mail on August 8, 2014. He Aff. ¶ 3. The next day, Linix's legal counsel contacted the Clerk of Court to confirm that this was a validly filed case. Id.; Pro Se Mot. 1-2. On August 14, 2014, Linix filed

---

[2] Linix avers that its "system blocks Power Electric, Inc. email traffic." He Aff. [Docket No. 67] ¶ 2. However, Linix does not state whether its system also blocks email traffic from Power Electric's counsel, who sent the email notices pertaining to the Judgments at issue. Additionally, Linix has requested that Power Electric use email to communicate with Linix in this matter. See Pro Se Mot. 1.

8

a Pro Se Motion requesting that this case be stayed or the time for filing a notice of appeal extended.  See generally id.  In the Pro Se Motion, Linix stated that "[t]o ensure a timely communication for this matter, the Court and the Petitioner and its counsel are advised to contact [Linix] via the following email addresses: 007@linix.com.cn; 012@linix.com.cn; 051@linix.com.cn (who are in charge of the matter) . . . ."  Id. at 1.  Two of these email addresses are the same as those used to send Linix notice of the Motion to Confirm Arbitration Award, Motion for Attorneys' Fees, and Motion to Modify Judgment.  See Aff. Service [Docket No. 10]; Second Post Decl. Ex. 9; Notice Hr'g [Docket 11] Attach. 1; First Post Decl. Ex. C.

**H. Present Motions**

After filing the Pro Se Motion, Linix retained counsel in Minnesota who filed an Amended Motion for Post Judgment Relief or an Extension of Time to Appeal.  The briefs and proposed order submitted in connection with this motion reflect that Linix is seeking relief from all judgments entered to date in this matter.  Power Electric opposes the request.

Additionally, Power Electric has filed an Amended Motion for Attorneys' Fees and Costs.  Power Electric argues that the Supplier Agreement entitles it to recover the attorneys' fees and costs it incurred in bringing the Motion to Modify Judgment and obtaining the Modified Judgment.

### III.  DISCUSSION

**A.  Linix's Motion for Post Judgment Relief**

Linix requests that all three Judgments [Docket Nos. 15, 33, 47] entered in this case be vacated under Federal Rule of Civil Procedure 60(b)(4) for lack of proper service.  Linix argues that Federal Rule of Civil Procedure 4(f)(1) required Power Electric to comply with the Hague

9

Convention when serving Linix, and that the Hague Convention requires translated documents and service by a government entity. Therefore, Linix argues that Power Electric's service by mail or email was insufficient to establish proper service under the Federal Rules and the Hague Convention.

Power Electric argues that full compliance with Rule 4 was not required for valid service under the Federal Arbitration Act ("FAA") because Linix agreed to personal jurisdiction under the Supplier Agreement, and thus the sole purpose of service was to alert Linix of the Court proceedings of which it was aware. The Court will analyze the parties' arguments with respect to each of the three Judgments.

### 1. Judgment Confirming Award

The service of petitions to confirm arbitration awards is governed by § 9 of the FAA, which states in pertinent part:

> If the adverse party is a resident of the district within which the award was made, . . . service [of the notice of application to confirm] shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. <u>If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.</u>

9 U.S.C. § 9 (emphasis added).

As the emphasized language demonstrates, the statute does not provide a method of service for a foreign party who is not a resident of any district in the United States. However, courts interpreting the application of § 9 to foreign entities have construed the phrase "in like manner as other processes of the court" to refer to Rule 4 of the Federal Rules of Civil Procedure. See Reed & Martin, Inc. v. Westinghouse Elec. Corp., 439 F.2d 1268, 1277 (2d Cir.

1971); Marine Trading Ltd. v. Naviera Comercial Naylamp S.A., 879 F.Supp. 389, 391-92 (S.D.N.Y. 1995).

Federal Rule of Civil Procedure 4(f)(1) provides for extraterritorial service on a foreign corporation "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." China is a party to the Hague Convention, and service on a Chinese entity under the Convention requires documents to be presented to the Chinese Central Authority in Beijing, which then sends the documents to the appropriate local court. The local court then effects service on the Chinese entity. See Convention on Service Abroad of Judicial and Extrajudicial Documents Civil and Commercial Matters arts. 2, 5, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638; accord *China - Central Authority & Practical Information*, HAGUE CONFERENCE ON PRIVATE INT'L LAW, http://www.hcch.net/index_en.php?act=authorities.details&aid=243 (last visited March 2, 2015) (listing the practical methods of service information provided by Chinese authorities).

Nevertheless, in cases arising from arbitration proceedings, "[d]efects in service of process may . . . be excused where considerations of fairness so require." In re InterCarbon Bermuda, Ltd., v. Caltex Trading & Transp. Corp., 146 F.R.D. 64, 68 (S.D.N.Y. 1993); accord In re Lauritzen Kosan Tankers v. Chem. Trading Co., 903 F. Supp. 635, 637 (S.D.N.Y. 1995). In cases resulting from arbitration proceedings where the parties have consented to the jurisdiction of the district court, the sole purpose of service is to provide notice that a court action has commenced. Victory Transp., Inc. v. Comisaria Gen'l de Abastecimientos y Transportes, 336 F.2d 354, 364 (2d Cir. 1964); MidOil USA, LLC v. Astra Project Fin. Pty Ltd.,

No. 12 Civ. 8484, 2013 WL 4400825, at *2 (S.D.N.Y. Aug. 15, 2013); Scandinavian Reinsurance Co. Ltd. v. St. Paul Fire & Marine Ins. Co., 732 F. Supp. 2d 293, 305 (S.D.N.Y. 2010), rev'd on other grounds, 668 F.3d 60 (2d Cir. 2012) ("[T]he only purpose of process in cases resulting from arbitration proceedings within a court's jurisdiction is to alert the opposing party that a court action has commenced . . . ."). If this purpose has been achieved by a party's actual notice of the proceedings, "no injustice results from giving effect to that notice." Lauritzen, 903 F. Supp. at 637; see also Marine Trading, 879 F. Supp. at 392 (stating that the "standards for service are to be liberally construed in the context of arbitration.").

This presumption applies to foreign entities who reside in countries that participate in the Hague Convention. See MidOil, 2013 WL 4400825, at *2 (holding petitioner's failure to effect service pursuant to the Hague Convention did not warrant dismissal on non-jurisdictional grounds where respondent received actual notice of the proceedings). The failure to strictly adhere to the agreed means of service in the Hague Convention "is not automatically fatal to effective service," because "the Convention 'should be read together with [Federal Rule of Civil Procedure] Rule 4, which stresses actual notice, rather than strict formalism.'" Id. at *2, n.3 (quoting Burda Media, Inc. v. Viertel, 417 F.3d 292, 301 (2d Cir. 2005) (emphasis in original)).

Here, Linix concedes that it consented in the Supplier Agreement to this Court's jurisdiction.[3] Additionally, Linix does not dispute that it received actual notice of the Petition

---

[3] The Court's jurisdiction over Linix is a significant distinction from the cases relied on by Linix for the proposition that a judgment entered against a defendant is void if the defendant was not properly served. For example, in Printed Media Servs., Inc. v. Solna Web, Inc., which Linix cites in its opening brief, the judgment was held to be void because the plaintiff's improper service on the defendant caused the federal court to lack jurisdiction over the defendant. 11 F.3d 838, 843 (8th Cir. 1993). Because jurisdiction is not at issue here, Printed Media does not apply.

and motion to confirm the Arbitration Award. Indeed, Linix informed Power Electric on June 19, 2013 that it received notice of the Petition from Power Electric's counsel in Shanghai and asked Power Electric to explain it. The motion for the Judgment Confirming Award was emailed to Linix's arbitration counsel and to Wang, who had earlier informed Power Electric by email that he was in charge of the arbitration proceedings in U.S. Court and that Power Electric should direct future correspondence to him. Additionally, notice of the motion hearing was sent by first-class mail and email to Linix's arbitration counsel and to Linix. Therefore, Linix had actual knowledge that these proceedings had been commenced.

Despite having received actual notice, Linix argues it is an entity in a Chinese and not an English-speaking country, and therefore, Power Electric's failure to follow the service required under the Hague Convention—including the translation of documents—distinguishes this case from cases where defects in service from one English-speaking party to another have been excused based on the respondent's actual notice of the proceedings. This argument is undercut by Linix's agreement to arbitrate disputes "in the English language, Supplier Agreement ¶ 7. Additionally, emails sent from Linix in China to Power Electric were in English.

Therefore, any defects in the service of the Petition and motion underlying the Judgment Confirming Arbitration Award will be excused here, because Linix had actual notice of these proceedings and no unfairness results from giving effect to that notice.

### 2. Attorneys' Fee Judgment

Linix next argues that the Attorneys' Fee Judgment that awarded Power Electric fees incurred in confirming the Arbitration Award must be vacated for lack of proper service. Linix makes no argument that it lacked actual notice of the attorneys' fee proceedings. Rather, Linix,

13

however, contends that the requested fees were beyond the scope of the Arbitration Award, and so the fee request constituted a "new claim" under Rule 5 of the Federal Rules of Civil Procedure that required a return to formal and proper service.[4]

The request for attorneys' fees underlying the Judgment was not a "new claim." The Arbitration Award specifically recognized "Power Electric's right to recover attorneys' fees, if any, that may hereafter be incurred to enforce its rights to future accountings and/or royalties." Arbitration Award 19-20. Therefore, Power Electric's recovery of attorneys' fees incurred in confirming the Arbitration Award is relief that was authorized in the Award. Moreover, confirmation of an award is an integral part of the arbitration process. Brown v. Brown-Thill, 762 F.3d 814, 826 (8th Cir. 2014) ("The enforceability of an award is an essential part of arbitration as authorized by the FAA.").[5] A claim for attorneys' fees incurred in confirming an award is one that arises in the arbitration context, and the same liberal standards for service apply.

Applying those standards here, the Court finds that Power Electric's service on Linix satisfies considerations of fairness and due process. Power Electric served the motion underlying the Judgment for Attorneys' Fees on Linix by mail and by email to Linix email addresses identified by Linix itself as "ensur[ing] a timely communication for this matter." Pro

---

[4] Rule 5 states in relevant part: "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2).

[5] In Brown, the Eighth Circuit denied a party's request for attorneys' fees incurred in defending an arbitration award because the parties' Arbitration Agreement did not authorize attorneys' fees incurred the arbitration process. Brown, 762 F.3d at 825-26. Here, in contrast, the Arbitration Award and the Supplier Agreement authorize attorneys' fees incurred by Power Electric in enforcing its rights to future royalties.

Se Mot. 1. Linix does not argue that it lacked notice of the motion or the entry of the Judgment for Attorneys' Fees. Indeed, Linix knew that Power Electric was garnishing one of its customers to satisfy the Judgment but made no effort to stop the garnishment and did not challenge the Judgment until several months after the Judgment had been fully satisfied. Therefore, the Judgment for Attorneys' Fees will not be vacated.

### 3. Modified Judgment

Linix also argues that the Modified Judgment is a new claim for relief requiring service under the Hague Convention. The Modified Judgment amended the Judgment Confirming Arbitration Award by converting Linix's obligation to pay royalties on future sales of up to 50,000 motors into an obligation to pay immediate royalties on 50,000 motors, regardless of whether the motors have been or will be sold. This relief exceeded the scope of the Arbitration Award, which only entitled Power Electric to royalties on motors actually sold. The money judgment of $876,255.24, which constitutes royalties on motors that have not been sold and may never be sold, is therefore a new claim for relief that was not at issue in the parties' arbitration and was not contemplated in the Supplier Agreement. Accordingly, Power Electric is not entitled to a liberal application of the service rules for this claim. The Modified Judgment will be vacated and the Judgment Confirming Award will be reinstated.

## B. Power Electric's Amended Motion for Attorneys' Fees

Power Electric argues that the Supplier Agreement entitles it to recover $45,763.47 in attorneys' fees and costs incurred in bringing the Motion for Modified Judgment. Linix disagrees, arguing that the fees are beyond the scope of the Supplier Agreement and were explicitly denied under the Arbitration Award.

"Under Minnesota law, attorney fees are permitted if authorized by contract or statute." Hinz v. Neuroscience, Inc., 538 F.3d 979, 987 (8th Cir. 2008). Here, the fees are contractually authorized by the Supplier Agreement, which provides that Power Electric "shall be entitled to recover its costs and expenses (including reasonable attorneys' fees) incurred to enforce the terms of this Agreement." Supplier Agreement ¶ 5. Power Electric's right to recover attorneys' fees incurred in enforcing Linix's royalty obligations is also authorized by the Arbitration Award, which explicitly states that Power Electric has the "right to recover attorneys'fees, if any, that may hereafter be incurred to enforce its rights to future accountings and/or royalties." Arbitration Mem. 19-20. Therefore, Power Electric is entitled to recover attorneys' fees to the extent the fees were necessarily incurred to enforce Linix's royalty obligations. [6]

Linix argues that the fees were unnecessary because Linix had become current on its royalty obligations by the time the Modified Judgment had been entered. However, Linix did not bring its pre-arbitration royalties current until after the Motion for Modified Judgment was filed. Indeed, the timing of Linix's July 8, 2014 payment for pre-arbitration royalties strongly suggests that the payment was prompted by Linix's receipt of the Motion for Modified Judgment on June 28, 2014. Additionally, Linix did not inform Power Electric that it had become current on its pre-royalty obligations until after the Modified Judgment had been entered. Therefore, the

---

[6] Linix further contends the arbitration provision of the Supplier Agreement requires the claim for attorneys' fees must be submitted to arbitration. However, "[i]ssues of compliance with an arbitration award typically are not submitted to the arbitrator." Domino Grp., Inc. v. Charlie Parker Mem'l Found., 985 F.2d 417, 421 n.2 (8th Cir. 1993). The arbitrators have already determined that Power Electric has the "right to recover attorneys' fees, if any, that may hereafter be incurred to enforce its rights to future accountings and/or royalties." Arbitration Mem. 19-20. Therefore, claims for fees incurred in this enforcement proceeding are properly submitted to the Court, rather than to the arbitrators.

fees incurred in bringing the Motion to Modify Judgment were necessary to enforce Linix's royalty obligations, even though the Modified Judgment has now been vacated.[7]  See, e.g., Leab v. Streit, 584 F. Supp. 748, 762 (S.D.N.Y. 1984) (holding defendant liable for plaintiff's cost in obtaining default judgment even though judgment was void for defective service).

In determining the size of the fee award, a court must consider the "time and effort required, novelty or difficulty of the issues, skill and standing of the attorney, value of the interest involved, results secured at trial, loss of opportunity for other employment, taxed party's ability to pay, customary charges for similar services, and certainty of payment." Jadwin v. Kasal, 318 N.W.2d 844, 848 (Minn. 1982).  Here, Power Electric seeks over $45,000 in fees and costs incurred in obtaining the Modified Judgment.  At the time the Modified Judgment was requested, Power Electric asserted that Linix owed slightly over $21,000 on royalties for motors that had been sold but not reported by Linix.  Thus, the fees incurred by Power Electric more than doubled the value of the interest involved at the time.  Additionally, although the issues involved are not common, they were narrow in scope, covered a limited time period, and essentially involved serving a subpoena on one entity and bringing a single motion in this Court. Therefore, $15,000 is a reasonable fee award under the circumstances.

---

[7] Linix further argues Power Electric's fees and costs to subpoena FBD were unnecessary due to Power Electric's knowledge of each motor Linix sells to FBD because Linix must buy screw seals for those motors from Power Electric.  However, the screw seal is a standard catalog item that can be purchased from other sources. Kelley Decl., Sept. 15, 2014 [Docket No. 75] ¶ 3. Therefore, the number of screw seals Power Electric sells to Linix is not necessarily an accurate indicator of how many motors Linix sells to FBD.

## IV.  CONCLUSION

Based upon the Petitioner's briefs and declaration submitted herewith, and the entire file herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Power Electric Distribution, Inc.'s Amended Motion for Attorneys' Fees and Costs [Docket No. 58] is **GRANTED IN PART** and **DENIED IN PART**.  Linix shall pay $15,000 in attorneys' fees to Power Electric.

2. Respondent Hengdian Group Linix Motor Co., Ltd.'s Amended Motion for Post Judgment Relief or an Extension of Time to Appeal [Docket No. 78] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The request to vacate the Judgment Confirming Award [Docket No. 15] is denied, and that Judgment remains valid.

    b. The request to vacate the Judgment for Attorneys' Fees [Docket No. 33] is denied, and that Judgment remains valid.

    c. The request to vacate the Modified Judgment [Docket No. 47] is granted, and that Judgment is VACATED as void for lack of proper service.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 2, 2015.